# N. Y. SUPREME COURT.

## SAMUEL S. SHIFFER agt. JOHN G. DIETZ.

*Rescission of contract — Fraudulent suppression of fact — When purchaser may rescind — Executor's power of sale — Tender.*

A contract for the purchase of real estate, which contract required the seller to give a perfect title, in fee simple, free from all incumbrances, may be rescinded where, at the time of the execution of the contract by the seller and the delivery of the deed thereunder, he fraudulently suppressed a fact which rendered the title imperfect.

Where a party has, by the fraudulent suppression of the existence of incumbrances, induced another to take the title to property, the purchaser is not bound to wait an unreasonable time in order to give the seller an opportunity to remove those incumbrances before he can rescind.

Where any executor neglects to take upon himself the execution of a will, any power of sale contained in the will may be executed by the executor or executors who shall take upon themselves the execution of such will.

About November, 1873, the plaintiff conveyed a part of the premises in question to Raynor & Morris, who were copartners with him in his purchase. On the 20th of April, 1876, the executors of Raynor and Morris, they having died, reconveyed this portion to plaintiff, and on the 25th of April, 1876, this action was commenced ; on the 5th of May, 1876, the plaintiff made a general assignment ; on the sixth of November the defendant tendered a deed, executed by himself and wife, to the plaintiff. The contract of sale which the plaintiff, by this action, seeks to rescind, was executed in March, 1872 :

*Held,* that the plaintiff did not lose his right to rescind by his delay in making the rescission, as such delay was caused solely by the representations of the defendant that he would make the title all right.

*Held,* also, that the conveyance to Raynor and Morris could not deprive these parties of the right of rescission, because such conveyance simply put the legal title where, in equity, it belonged.

*Held,* further, that the conveyances to plaintiff vested in him the whole title to the property, and his deed tendered to the defendant was, therefore, sufficient.

Shiffer agt. Dietz.

The subsequent assignment of the plaintiff could not change the status of the parties, which had become fixed on the 25th of April, 1876.

*Special Term, March,* 1877.

Van Brunt, *J.* — Every principle of equity demands that the plaintiff should be decreed the relief sought in this action, unless some plain principles of law must be violated in the granting of such relief. .

This action is brought to rescind a contract for the purchase of real estate, which contract required the seller to give a perfect title, in fee simple, free from all incumbrances upon the ground, that at the time of the execution of this contract by the defendant, and the delivery of the deed thereunder, he fraudulently suppressed the fact of his having a wife living, whose release of dower was necessary to convey to the plaintiff a perfect title

The evidence seems to establish the fraudulent suppression of this fact beyond all question. The plaintiff, prior to October, 1869, had well known the defendant and knew that he was a married man. He also knew that in October, 1869, the defendant's wife died. In September, 1871, the defendant was secretly married to one Harriet Dietz. In the fall of that year the defendant spoke to the plaintiff of the loss of his wife, and about his feeling low-spirited in consequence thereof. At or about the time of making the contract for the sale of this property, in March, 1872, the defendant told the plaintiff that he sold the property because he wanted to go to Europe, as he had lost his wife a year or so before and felt melancholy. Each of these statements about the loss of his wife and the melancholy condition of his feelings was made after his marriage with Harriet Dietz. It appears from the evidence that inquiries were made of the family of Mr. Dietz as to whether he was married or not, by the counsel for the plaintiff, and he was informed that he was not.

The defendant well knew that if the plaintiff had known of this second marriage at the time of the entry into the con-

tract and the taking of the deed, he would not have accepted the title without the release of dower of the second wife. There is not the slightest pretense that he did not know this fact, but he attempts to excuse himself for this fraudulent suppression by asserting that he didn't suppose his second marriage was valid, because he believed at the time he married her that she had a husband living.

In the fall of 1872 the defendant seems to have realized the fact that the first husband of his second wife was an individual whose existence it was impossible to prove, and that there was no such way to avoid his marriage as he had supposed. In March, 1873, he commenced a suit for divorce against his wife on the ground of adultery. In the summer of that year the plaintiff first learned that any person claimed to be the wife of Dietz. About November, 1873, the defendant called upon the plaintiff for interest upon the mortgages, when the plaintiff told Dietz of the defect in the title. His reply was that a woman was attempting to blackmail him, and he would have it settled in a very short time, and before the next interest fell due he would have it all arranged, and relying upon these representations of the defendant, the plaintiff paid the interest then due. The plaintiff conveyed, about this time, a part of the premises to Raynor and Morris, who were copartners with him in his purchase.

The defendant repeatedly told the plaintiff, during the progress of the divorce suit, that if he could not make the title good he would return the money, evidently expecting to perfect the title by a decree favorable to himself in the divorce case. Finally, in July, 1874, a decree of divorce was refused to the plaintiff, they both having been convicted of adultery. Then the defendant's attorney having conceived the idea that his wife, having been convicted of adultery, was no longer entitled to dower in his estate, at his own expense had a case carried to the court of appeals for the purpose of testing this question. In January, 1876, that case was decided against the theory of defendant's counsel.

Shiffer agt. Dietz.

On the 20th of April, 1876, the executors of Raynor and Morris, they having died, reconveyed the portions of the premises conveyed to Raynor and Morris to the plaintiff, and on the 25th of April, 1876, this action was commenced, and on the 5th of May, 1876, the plaintiff made a general assignment to one Jacobs. On the 1st of November, 1876, the defendant tendered a deed, executed by his wife and self, to the plaintiff.

It is claimed by the defendant that the plaintiff lost his right to rescind by his delay in making the rescission, and by the fact of his having conveyed interests in the property to Raynor and Morris.

It is perfectly clear from the evidence in the case that the plaintiff's delay in making his rescission was caused solely by the representations of the defendant that he would make the title all right, as he expected to do at first by the divorce suit, and after his expectations in that regard had been defeated, as he hoped to do by a favorable decision in the case carried to the court of appeals. I can see no reason why the plaintiff should have been required, after having thus long waited for the defendant to perfect this title, to suffer any further delay. It certainly could not have been expected that he should have waited nearly another year after the decision in the court of appeals to enable the defendant to perfect his title.

The case of *Meyer* agt. *DeMier* (52 *N. Y.*, 647) is no authority for the proposition that where a party has, by the fraudulent suppression of evidence of the existence of incumbrances, induced another to take the title to the property, that before the purchaser can rescind he must give the seller a reasonable opportunity to remove those incumbrances.

The conveyance to Raynor and Morris could not deprive these parties of the right of rescission, because such conveyances simply put the legal title where, in equity, it belonged.

By the wills of both Raynor and Morris the executors, the survivor or survivors of them, were empowered to convey any portion of the real estate.

It appears, from the certificate of the surrogate, offered in evidence, that of the executors named in Raynor's will, Sarah E. was the only one that qualified ; and that of the executors named in the will of Peter Morris, John H. Morris alone qualified, and the deeds to Schiffer were executed by these sole acting executors. The Revised Statutes (*second volume*, 109, *section* 55), expressly provides that where any executor neglects to take upon himself the execution of a will, any power of sale contained in the will may be executed by the executor or executors who shall take upon themselves the execution of such will. The conveyances, therefore, to Schiffer vested in him the whole title to the property, and the plaintiff's deed tendered to the defendant was, therefore, sufficient.

As to the question of the possession of the plaintiff, it is apparent that it was understood that in case the tender of the plaintiff was accepted, possession of the premises was at the defendant's disposal. The subsequent assignment of the plaintiff could not change the status of the parties, which had become fixed on the 25th of April, 1876.

There should be a reference to determine the amounts which the plaintiff has realized from the property, and the amounts which he has paid out thereon, and for the balance he should have judgment against the defendant, and also a judgment cancelling the bonds and mortgages given for part of the purchase-money, with costs.